**TEXAS MUTUAL INSURANCE COMPANY, Appellant and Cross–Appellee,**

v.

**Juan NARVAEZ, Appellee and Cross–Appellant.**

No. 05–08–00109–CV.

Court of Appeals of Texas, Dallas.

March 16, 2010.

Rehearing Overruled June 8, 2010.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

James A. Hemphill, P.M. Schenkkan, Boyce C. Cabaniss, Graves, Dougherty, Hearon & Moody, P.C., Mary Barrow Nichols, Shannon Leigh Pounds, Texas Mutual Insurance Company, Austin, L. Boyd Smith, Jr., Sedgwick, Detert, Moran & Arnold, LLP, Houston, for appellant.

Michael P. Doyle, Jeffrey L. Raizner, Qeuntin Haag, Doyle Raizner, LLP, Houston, Peter N. Rogers, Rogers, Booker & Lewis, Richardson, Rick Thompson, Deborah G. Hankinson, Hankinson Levinger, LLP, Dallas, for appellee.

Before Chief Justice WRIGHT and Justices RICHTER and FILLMORE.

## OPINION

Opinion by Chief Justice WRIGHT.

In this workers' compensation case, Juan Narvaez claimed he suffered a back injury in the course of his employment. A hearing officer ruled in favor of Narvaez, and an appeals panel of the Texas Workers' Compensation Commission (TWCC)[1] affirmed the hearing officer's decision. Texas Mutual Insurance Company appealed TWCC's ruling to the trial court. The case proceeded to trial before a jury. The trial court declared a mistrial, and later granted summary judgment for Narvaez and awarded sanctions against Texas Mutual. In three issues, Texas Mutual contends (1) the trial court abused its discretion by ordering death penalty sanctions against Texas Mutual; (2) the trial court erred in granting summary judgment; and (3) on remand, Texas Mutual should be permitted to take full discovery against the law firm that represented Narvaez at trial. In his cross-appeal, Narvaez contends the trial court erred in denying his request for a portion of his attorneys' fees under section 408.221 of the Texas Labor Code. We reverse the trial court's judgment against Texas Mutual and remand for further proceedings. We do not reach the question raised by Narvaez's cross-appeal.

### BACKGROUND

In August 2003, Narvaez was employed by Greater Metroplex Interiors, Inc. He performed metal stud framing and drywall installation. Alleging he injured his back at work on August 29, 2003, Narvaez filed a claim for benefits under the Texas Workers' Compensation Act. Texas Mutual disputed the claim. A benefit review conference was held on February 3, 2004, to mediate resolution of the disputed issues, but the parties were unable to reach agreement, and the case proceeded to a contested case hearing on April 22, 2004. After an evidentiary hearing, the hearing examiner ruled in favor of Narvaez, concluding Narvaez sustained a compensable injury on August 29, 2003. Texas Mutual appealed this ruling to an appeals panel of the TWCC. The appeals panel affirmed the hearing officer's ruling, concluding that "the hearing officer's decision is supported by sufficient evidence and is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust."

Texas Mutual then sought judicial review of the hearing examiner's and appeal

---

1. The Texas Workers' Compensation Commission was replaced in 2005 by the Texas Department of Insurance, Division of Workers' Compensation. *See* TEX. LAB.CODE ANN. § 402.001 (Vernon 2006). We refer to that authority as it existed at the time of the administrative hearings in this case.

panel's rulings. The parties undertook discovery and proceeded to trial before a jury. On the first day of trial, after the jury was seated and opening statements were made, Texas Mutual called Narvaez to testify. In its examination of Narvaez, Texas Mutual used a document marked as Plaintiff's Exhibit 1. This document, entitled "Dallas County Hospital District, Progress Notes—Outpatient Department" is dated September 2, 2003. According to the parties' briefing, this document is a Parkland Hospital medical record prepared by Dr. Chong Kim, who examined Narvaez—with one significant point of contention. In the doctor's handwritten notes, the second and third lines read, "has had leg pain mild several," followed by an illegible word. In the copy of this record marked as Exhibit 1 at trial, above the illegible word is written, also in handwriting, "mos." The parties agree this handwritten "mos." did not appear on the original medical record.

The record reflects Narvaez's attorneys approached the bench during Texas Mutual's questioning of Narvaez and held a bench conference that was not transcribed. Soon after the conference, the trial court dismissed the jury for the day and discussed with the parties' counsel whether Exhibit 1 had been "doctored." The parties agreed to a mistrial, and the trial court ordered an evidentiary hearing to be held on a motion for sanctions. Narvaez filed a no-evidence motion for summary judgment and a request for sanctions. The trial court granted both motions, and this appeal followed.

### STANDARDS OF REVIEW

We review the imposition of sanctions for an abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex.2007) (citing *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex.2006), and *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004)). An appellate court may reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. *Cire*, 134 S.W.3d at 838–39.

In determining whether the trial court abused its discretion, we must ensure that the sanctions were appropriate or just. *Am. Flood Research*, 192 S.W.3d at 583 (citing *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 916 (Tex. 1991)). To determine if the sanctions were appropriate or just, the appellate court must undertake a two-part inquiry. *Am. Flood Research*, 192 S.W.3d at 583. First, we must ensure that there is a direct relationship between the improper conduct and the sanction imposed. *Id.* In making this determination, we should "examine whether punishment was imposed upon the true offender and tailored to remedy any prejudice" caused by the conduct. *Id.* Second, we must make certain that less severe sanctions would not have been sufficient to promote compliance. *Id.*

In reviewing sanctions orders, we are not bound by a trial court's findings of fact and conclusions of law; rather, we must independently review the entire record to determine whether the trial court abused its discretion. *Id.*

We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See* Tex.R. Civ. P. 166a(i); *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832–33 (Tex.App.-Dallas 2000, no pet.). We must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *See Gen. Mills*, 12 S.W.3d at 833. When analyzing no-evidence summary judgments, we consider the evidence in the light most

favorable to the nonmovant. *See id.* A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750–51 (Tex.2003). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Id.* More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.*

We review Texas Mutual's challenge to the trial court's order limiting discovery for abuse of discretion. *See Buckeye Ret. Co., LLC, Ltd. v. Bank of Am., N.A.,* 239 S.W.3d 394, 403–04 (Tex.App.-Dallas 2007, no pet.) (trial court's discovery rulings are governed by abuse of discretion standard, citing *Crooks v. Moses,* 138 S.W.3d 629, 642 (Tex.App.-Dallas 2004, no pet.)).

As to Narvaez's cross-appeal, the availability of attorney's fees under § 408.221 is a question of law we review de novo. *See Holland v. Wal-Mart Stores, Inc.,* 1 S.W.3d 91, 94 (Tex.1999) (availability of attorney's fees under particular statute is question of law for court).

### SANCTIONS

In its first issue, Texas Mutual contends the trial court abused its discretion by awarding "death penalty sanctions" against Texas Mutual for falsifying a document. Narvaez contends the sanctions were "fair and warranted by the fraud on the court perpetrated by Texas Mutual and its agents." Narvaez argues the trial court did not impose "case determinative" or "death penalty" sanctions as alleged by

Texas Mutual. Narvaez does not dispute, however, that we may review the sanctions assessed to determine whether the trial court abused its discretion.

The complained-of order provides in part:

> This Court further finds that Texas Mutual Insurance Company committed fraud on this Court and the Defendant by falsifying a critical medical record, and then using that record throughout discovery, depositions and trial. This fraudulent conduct was committed knowingly and intentionally by agents and representatives of Texas Mutual Insurance Company. This Court finds that the falsified medical record was used knowingly and intentionally by Texas Mutual Insurance Company to gain an advantage in this suit.

The trial court awarded monetary sanctions of $30,000 against Texas Mutual, and also ordered Texas Mutual to post the sanctions order on its website.[2] Texas Mutual also maintains the trial court granted the no-evidence summary judgment as a sanction, while Narvaez contends his summary judgment motion was granted on its own merits. We discuss the summary judgment separately below. We conclude the trial court abused its discretion by concluding Texas Mutual committed fraud "knowingly and intentionally" by "falsifying a critical medical record."

At trial, after jury selection, opening statements, and limited questioning of Narvaez, the trial court dismissed the jury for the evening and stated, "I have a pretty serious concern about this Parkland exhibit." After discussing the matter with counsel for the parties, the trial court con-

---

**2.** Texas Mutual also argues the portion of the order requiring the website posting violated "the First Amendment's prohibition on compelled speech," citing several United States Supreme Court cases. Because we conclude the trial court erred in assessing sanctions against Texas Mutual, we need not address this argument.

cluded that counsel for Texas Mutual "provided false medical records" to Narvaez's doctors in depositions and to the jury. The parties agreed to a mistrial, and the trial court stated he would hold "a motion for sanctions hearing wherein proper evidence will be submitted."

Narvaez then filed a motion for sanctions and a no-evidence motion for summary judgment to which Texas Mutual responded. At a hearing, counsel for Narvaez argued Texas Mutual provided a "fake" version of the Parkland medical record in the exhibits to be used at trial, removing the original, correct version. Narvaez argued, "[w]e think a summary judgment is mandated because if you exclude the faked evidence and its fruits, they have no case." Texas Mutual appeared at the hearing with its trial counsel and a corporate representative prepared to testify, but the trial court did not hear their testimony. After argument, the trial court concluded:

> I think this was done with conscious bad faith, whether it was done by Mr. Stephens, or Mr. Davis, or somebody in Mr. Davis' office. I cannot imagine a situation where somebody would write onto, especially such a critical medical record, write onto a medical record, an attorney would do that and then submit that to another attorney, whether it was Mr. Davis or Mr. Stephens, or somebody else in the chain that we don't know about, some random third person. That's a lot different than an innocent mistake. You don't write on medical records and submit them to a court. Especially a medical record that is central to the entire case.
>
> And so that's—to me, whoever did that, did that on behalf of Texas Mutual. Texas Mutual benefitted from it. And that shows a conscious disregard for the procedures of this court, for the Law-

yer's Creed. And so if Mr. Stephens didn't know it was doctored, maybe he shouldn't be held responsible for that, but Texas Mutual—these are Texas Mutual's agents and somebody along the way did that.

> And so I'm going to grant the summary judgment. I'm going to grant sanctions.

The parties submitted numerous exhibits to the court after the hearing, and the court's order imposing sanctions followed.

■ Narvaez moved for sanctions under rules 13 and 215.2(b) of the Texas Rules of Civil Procedure. The trial court's order did not refer to a specific rule; therefore, we may uphold the sanctions on the basis of either rule. *See Am. Flood Research,* 192 S.W.3d at 583–84. Rule 215.2(b), entitled, "Failure to Comply with Order or with Discovery Request," provides that if a party or a person on the party's behalf "fails to comply with proper discovery requests or to obey an order to provide or permit discovery, ... the court in which the action is pending may, after notice and hearing, make such orders in regard to the failure as are just...." TEX.R. CIV. P. 215.2(b). In determining whether a sanction is "just" under rule 215, the supreme court has explained:

> In *TransAmerican Natural Gas Corporation v. Powell,* 811 S.W.2d 913 (Tex. 1991), we defined the requirements for discovery sanctions to be "just" under [rule 215] ... *TransAmerican* set out a two-part test for determining whether a particular sanction is just. First, there must be a direct nexus among the offensive conduct, the offender, and the sanction imposed. A just sanction must be directed against the abuse and toward remedying the prejudice caused to the innocent party, and the sanction should be visited upon the offender. The trial court must attempt to determine wheth-

er the offensive conduct is attributable to counsel only, to the party only, or to both.

Second, just sanctions must not be excessive. In other words, a sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes, which include securing compliance with discovery rules, deterring other litigants from similar misconduct, and punishing violators. We require courts to consider less stringent sanctions and whether such lesser sanctions would fully promote compliance. We reiterate that "[c]ase determinative sanctions may be imposed in the first instance only in exceptional cases when they are clearly justified and it is fully apparent that no lesser sanctions would promote compliance with the rules."

*Spohn Hosp. v. Mayer,* 104 S.W.3d 878, 882 (Tex.2003) (citations omitted). As the court noted in *TransAmerican,* "[s]anctions which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules." *TransAmerican,* 811 S.W.2d at 918. As the supreme court has explained, "we have held for all . . . forms of discovery that absent flagrant bad faith or callous disregard for the rules, due process bars merits-preclusive sanctions." *Wheeler v. Green,* 157 S.W.3d 439, 443 (Tex.2005) (per curiam) (applying rule to requests for admissions, and collecting cases regarding other types of discovery).

■ Rule 13 permits the trial court to impose sanctions on attorneys or parties who file a "fictitious pleading" or "make statements in pleading which they know to be groundless and false." After notice and hearing, the trial court "shall impose an appropriate sanction" available under Rule

215. Tex.R. Civ. P. 13. Rule 13 also provides, "[c]ourts shall presume that pleadings, motions, and other papers are filed in good faith. No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order." *See Low,* 221 S.W.3d at 614 (under rule 13, courts presume pleadings and other papers are filed in good faith) (citing *GTE Commc'ns Sys. Corp. v. Tanner,* 856 S.W.2d 725, 730 (Tex.1993)). The party seeking sanctions bears the burden of overcoming this presumption of good faith. *Low,* 221 S.W.3d at 614. Bad faith "is not simply bad judgment or negligence, but the conscious doing of a wrong for dishonest, discriminatory or malicious purpose." *Armstrong v. Collin Cty. Bail Bond Bd.,* 233 S.W.3d 57, 63 (Tex.App.-Dallas 2007, no pet.). Improper motive is an essential element of bad faith. *Elkins v. Stotts–Brown,* 103 S.W.3d 664, 669 (Tex.App.-Dallas 2003, no pet.).

Narvaez argues that Exhibit 1 was "fraudulent" because "attorneys are not permitted to amend, annotate, highlight, edit, or rearrange the content of an original document—thereby interpreting or emphasizing a portion of the document with a trial court as an authentic copy of the original." Narvaez concludes, "[t]hat is fraud, and it violates Rule 13."

■ We conclude Narvaez did not establish bad faith under Rule 13 or "callous disregard for the responsibilities of discovery under the rules" under Rule 215 on the part of either Texas Mutual or its counsel. *See TransAmerican,* 811 S.W.2d at 918. First, there is no evidence the handwritten "mos." was either fraudulent or false. Narvaez himself testified that is exactly what he did tell the doctor:

Q. The record says near the top of the portion that the doctor who saw you wrote out, LBP, or lower back pain,

today, has had leg pain. Then there's a word that looks like "mild" and then words that looks like "several months." It looks like it's abbreviated MOS. *Did you in fact tell the doctor on the date— on that date that you went to the [sic] see him that you had been having problems for several months?*

*A. Yes, sir, I did tell him that.* It was normal pains, but it wasn't any kind of pain that would prohibit me from working. The only pain that prohibited me from working was on August 29.

Q. Why were you telling the doctor about pain that you had had for several months when you went to see him on September 2, 2003?

A. Because for me, they were normal of being tired or exhausted.[3] (Emphasis added).

At the conclusion of that hearing, the hearing examiner acknowledged Narvaez's admission, noting, "Claimant [Narvaez] acknowledged that he did have some prior leg pain and soreness in his back, but nothing more than what he considered normal for that type of work." The examiner found, however, that "Claimant proved by the greater weight of the credible evidence that he sustained a compensable injury on August 29, 2003." This was in part a credibility issue for the hearing examiner to resolve, and he concluded, "Claimant's testimony was plausible, reasonably consistent with the medical evidence, and credible." While the parties disagree on the significance of Narvaez's statement that he had been having problems for several months, there is no dispute regarding what Narvaez said.

Second, there is no evidence of use of Exhibit 1 in bad faith. Rather than showing "knowing and intentional" use of a "falsified" document, the record reveals Texas Mutual's trial counsel, Kenneth Stephens, did not realize there were two versions of the document until opposing counsel challenged his use of the document during trial. While Narvaez argues Stephens's testimony is "simply not plausible," he does not offer any evidence to establish any intentional conduct by Stephens. Narvaez points to Stephens's use of Exhibit 1 "in the key depositions of Narvaez's medical experts." However, the

---

3. Similarly, the exhibits in the record include an affidavit by Dr. Kim attesting that the illegible word in Exhibit 1 was "months." Narvaez filed a written objection to this affidavit on the ground that it was not a proper business record of Parkland Hospital. However, the objection did not challenge Dr. Kim's statement of what his own handwriting actually said, and Dr. Kim's affidavit does not purport to be a business record of Parkland. Also, the record from the contested case hearing includes the hearing examiner's attempt to determine the illegible word:

> THE HEARING OFFICER: According to the new practices and procedures, I am to identify anything in the exhibits that is not clearly legible to me and then give the offering party the opportunity to read to me what they think it says and then I may consider their reading of it. If that may be not clearly legible and the offering party does not do that, then I may not consider it.

> Claimant's Exhibit 3, page 1, on the—in the handwritten portion, the third line, it says "several" something. What is that, Ms. Trevino [attorney representing Narvaez]?
> MS. TREVINO: I don't know what that is, Your Honor.
> THE HEARING OFFICER: All right, I'm going to draw a circle around it and I will not consider that word. This is Claimant's Exhibit 3, page 1, and it's the line above the third line down where it says "several" something. All right....
> [after admitting the carrier's exhibits] This is the same thing that was in the ... Claimant Exhibit. Carrier Exhibit C, page 1, the third line. It says leg pain, mild several what?
> MR. DAVIS [attorney representing the carrier]: Several months.
> THE HEARING OFFICER: Months. I'll consider that interpretation.

deposition excerpts cited only reveal Stephens's attempt to cross-examine Narvaez's doctors by asking them whether they were aware Narvaez had told the doctor at Parkland he had been having back pain for several months. And as Narvaez points out, his admitted statement that he had been having back pain for several months made no difference in his experts' diagnoses and conclusions.

Third, there is no direct nexus among the offensive conduct, the offender, and the sanction imposed. *See Spohn Hosp.*, 104 S.W.3d at 882. Stephens testified in his affidavit that he received Exhibit 1 in an electronic case file from David Davis, the lawyer and independent adjuster who represented Texas Mutual at the contested case hearing at TWCC. The trial court did not "determine whether the offensive conduct was attributable to counsel only, to the party only, or to both," *see id.*, concluding instead that he did not know "whether it was Mr. Davis or Mr. Stephens, or somebody else in the chain that we don't know about, some random third person ...". Narvaez argues that Texas Mutual "did not attempt to defend the conduct" of Davis; did not file an affidavit on his behalf; and did not "have Davis attend the sanctions hearing;" therefore, Davis's conduct is properly attributable to Texas Mutual. Davis's actions and his good or bad faith, however, were not Texas Mutual's to prove. *Low,* 221 S.W.3d at 614 (party seeking sanctions bears burden of overcoming presumption of good faith). It was Stephens's use of Exhibit 1 in discovery and at trial that the trial court sanctioned. Stephens, however, offered detailed testimony to support his statement that he "never took any action with the intent to mislead the Court, the parties, or their counsel as to the content or authenticity" of Exhibit 1. As Narvaez argues, in some circumstances it is appropriate to impose sanctions on a corporate party for the conduct of its attorney or employee. *See, e.g., Elec. Data Sys. Corp. v. Tyson,* 862 S.W.2d 728, 737–38 (Tex. App.-Dallas 1993, orig. proceeding)(lawyer cannot shield client from sanctions; party must bear some responsibility for its counsel's discovery abuses when it is or should be aware of counsel's conduct and the violation of discovery rules). Here, however, where the only evidence shows that the attorney's conduct on which the sanction was premised was unintentional or negligent, sanctions imposed on Texas Mutual for intentional conduct are improper.

The trial court imposed a monetary sanction, in an amount Narvaez's attorney argued would constitute "something reasonable for the time and expense [Narvaez] had to go through having to show up for trial ... I would say 30,000 would make a huge difference to compensate this man. And that's basically 10,000 per year for what they've done." In addition, the trial court imposed the requirement that Texas Mutual post a link to a certified copy of the sanctions order on its website. The parties dispute whether the summary judgment was also a sanction. Narvaez argues the summary judgment was a separate request for relief, granted on its own merits. However, the requests for summary judgment and sanctions were included in the same motion, argued at the same hearing, and granted in the same order. Narvaez argued Texas Mutual had "no case" absent the "faked" evidence, and the trial court considered no other evidence, granting the summary judgment immediately after condemning Texas Mutual for use of the "doctored" exhibit. Narvaez did not ask the trial court to consider sanctions directly related to the offensive conduct, such as striking Exhibit 1 or prohibiting evidence relating to Exhibit 1, and the trial court did not discuss any lesser or directly-related sanction. As we discuss

more fully below, the result of the hearing on the sanctions and summary judgment motions was that the trial court did not consider legally sufficient evidence supporting Texas Mutual's cause of action. The effect of the trial court's judgment was to preclude presentation of the merits of the case because of Texas Mutual's conduct, the same result as if the sanctions had been case-determinative. As the court explained in *Spohn Hospital,* "[c]ase determinative sanctions may be imposed ... only in exceptional cases when they are clearly justified and it is fully apparent that no lesser sanctions would promote compliance with the rules." *Spohn Hosp.,* 104 S.W.3d at 882. Narvaez did not meet this burden. We sustain Texas Mutual's first issue.

### SUMMARY JUDGMENT

 Narvaez's no-evidence summary judgment was premised on the argument that without the challenged medical record, there was no evidence to support Texas Mutual's claim that Narvaez did not suffer a compensable injury on August 29, 2003.

Even without considering the challenged medical record, Texas Mutual offered some evidence to refute Narvaez's claim that he suffered a compensable injury on August 29, 2003. In its summary judgment response, Texas Mutual offered the testimony of three co-workers, Jeremy Darden, Liza Galindo, and Gerardo Jaquez. In deposition testimony, each of these witnesses testified he or she asked Narvaez (either directly in Spanish or with the aid of another Spanish-speaking employee) whether he had hurt himself on the job at work, and Narvaez responded that he did not. Considering this evidence in the light most favorable to Texas Mutual, which we are required to do, *see Gen. Mills,* 12 S.W.3d at 833, we conclude Texas

Mutual presented more than a scintilla of evidence to raise a fact issue on whether Narvaez suffered a compensable injury on August 29, 2003. While a jury may find Narvaez to be a more credible witness, as the hearing examiner did, this is a determination for the jury to make.

Narvaez also argues the summary judgment can be affirmed because there is no evidence Narvaez suffered from a pre-existing condition or injury that was the sole cause of his disability. Narvaez contends "Texas Mutual's claim is that Narvaez's back injury was pre-existing." Texas Mutual's appeal, however, is of the hearing examiner's finding that Narvaez suffered a compensable injury on August 29, 2003. *See* TEX. LAB.CODE ANN. § 410.302(b) (Vernon 2006) (trial limited to issues decided by appeals panel and on which judicial review sought; pleadings must specifically set forth determinations of appeals panel by which party is aggrieved). Although Texas Mutual bears the burden of proof on this issue at trial, TEX. LAB.CODE ANN. § 410.303 (Vernon 2006) (party appealing issue has burden of proof by preponderance of evidence), Texas Mutual's burden in response to Narvaez's no-evidence summary judgment motion is to raise a genuine issue of material fact on its claim. As discussed above, Texas Mutual has met its burden of raising a genuine issue of material fact on its claim. Summary judgment for Narvaez was not proper. We sustain Texas Mutual's second issue.

### ADDITIONAL DISCOVERY

 In its third issue, Texas Mutual contends the trial court erred in refusing to permit discovery to determine whether Narvaez's attorneys engaged in "possibly sanctionable" conduct. Generally, the trial court has discretion to control the scope of discovery for the cases over which it presides. *See Dillard Dep't*

*Stores, Inc. v. Hall,* 909 S.W.2d 491, 492 (Tex.1995)(per curiam). In fact, the trial court "must make an effort to impose reasonable discovery limits." *In re Am. Optical Corp.,* 988 S.W.2d 711, 713 (Tex.1998); *see also In re Allstate County Mut. Ins. Co.,* 227 S.W.3d 667, 668 (Tex.2007) (citing *In re CSX Corp.,* 124 S.W.3d 149, 152 (Tex.2003), for this proposition).

Texas Mutual sought to depose Narvaez's attorneys, arguing that the discovery was relevant to Narvaez's sanctions motion. In its motion to continue the sanctions hearing, Texas Mutual argued:

> A primary theory of Mr. Narvaez's sanctions motion is that the mistrial was a waste of judicial resources caused by Texas Mutual. [footnote omitted]. Mr. Narvaez's counsel is responsible for the mistrial, not Texas Mutual or Texas Mutual's counsel. Mr. Narvaez sought the mistrial, despite knowing about the challenged annotated document for well over a year prior to trial and doing *nothing* to resolve any dispute or clarify the document before trial.

Thus, the discovery sought was relevant to Narvaez's motion for sanctions, not to the matters pleaded in Texas Mutual's operative petition. In an order dated January 4, 2008, on Narvaez's motion to quash depositions of his attorneys, the trial court denied Texas Mutual's request to take oral depositions, but permitted Texas Mutual to propound five written questions to be answered by four of Narvaez's attorneys.

Under the rules of civil procedure, a party may obtain discovery regarding matters that are not privileged and are relevant to the subject matter of the pending action. *See* Tex.R. Civ. P. 192.3(a); *Buckeye Ret. Co.,* 239 S.W.3d at 403. The issues to be decided in the case, whether Narvaez suffered a compensable injury on August 29, 2003, and whether he had a disability resulting from that injury, had already become secondary to the facts relating to the sanctions issues, as discussed above. We cannot say the trial court acted unreasonably or without reference to guiding rules and principles by denying further discovery from Narvaez's attorneys regarding sanctions. *See Buckeye Ret. Co.,* 239 S.W.3d at 403 (trial court did not abuse discretion by denying further discovery where no further information could be obtained on an issue not relevant to subject matter of pending action). We overrule Texas Mutual's third issue.

### CROSS-APPEAL

In one issue, Narvaez contends the trial court erred in denying a portion of the attorneys' fees he requested under section 408.221 of the Texas Labor Code. Under section 408.221, if a claimant "prevails on an issue on which judicial review is sought by the insurance carrier," then the claimant may recover attorneys' fees from the carrier. *See* Tex. Lab.Code Ann. § 408.221(c) (Vernon 2006). Here, Narvaez moved to recover both the attorneys' fees expended in defending Texas Mutual's appeal on the merits, and the fees expended to recover those fees. The trial court awarded $203,113.27 as the reasonable and necessary attorneys' fees resulting from Texas Mutual's appeal of the final decision of the Appeals Panel. The trial court, however, excluded $6,749.00 from the award of fees to Narvaez, concluding that attorneys' fees could not be recovered "for the pursuit of attorney's fees," based upon *Twin City Fire Insurance Co. v. Vega–Garcia,* 223 S.W.3d 762, 769 (Tex.App.-Dallas 2007, pet. denied). We need not discuss our holding in *Twin City* or its applicability here. Because section 408.221 permits recovery of attorney's fees only for issues on which the claimant "prevails," and we have sustained Texas Mutual's issue challenging the summary judg-

ment in favor of Narvaez, we do not reach the question raised by Narvaez's cross-appeal. *See* Tex.R.App. P. 47.1.

We reverse the trial court's judgment and remand the cause.