**Reverse and Remand and Opinion Filed April 10, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00054-CV

**FATIMA DOLORES RODAS, Appellant**

**V.**

**LA MADELEINE OF TEXAS, INC. AND LUIS BLAS, Appellees**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 10-04672**

## MEMORANDUM OPINION

Before Justices Lang, Brown, and Whitehill
Opinion by Justice Whitehill

This case addresses whether the trial court abused its discretion by denying an unsuccessful arbitration claimant's motion to compel discovery regarding potential evident partiality when the facts showed that the arbitrator failed to disclose two subsequent appointments to serve as the sole arbitrator in cases involving the respondent's law firm while the claimant's case was still pending.

Appellant Fatima Dolores Rodas arbitrated a personal-injury claim against appellees La Madeleine of Texas, Inc. and Luis Blas (collectively "La Madeleine"). The arbitration ended in a take-nothing award against Rodas, which the trial court eventually confirmed. Rodas appealed. The dispositive issue is whether the trial court abused its discretion by denying Rodas an opportunity to conduct discovery regarding her motion to vacate the arbitration award. We

conclude that the trial court abused its discretion, so we reverse the trial court's judgment and remand for further proceedings. Because we decide this case based on the above issue, we do not discuss Rodas's other appellate issues.

## I. BACKGROUND

### A. Commencement of suit and arbitration.

Rodas sued La Madeleine for personal injuries in April 2010. She alleged that she was injured in the course and scope of her employment for La Madeleine of Texas, Inc., and that Luis Blas was her supervisor. She also alleged that La Madeleine of Texas, Inc. was not a subscriber to workers' compensation insurance coverage.[1]

La Madeleine filed a motion to compel arbitration, which the trial court granted in June 2011. In February 2012, arbitrator Mark Gilbert signed an award ordering Rodas to take nothing on her claims.

### B. Post-arbitration proceedings in the trial court.

Returning to the trial court, Rodas in May 2012 filed a motion to vacate the arbitration award. She argued, among other things, that Gilbert showed evident partiality by failing to disclose certain contacts between him and La Madeleine's counsel, such as another arbitration running concurrently with Rodas's arbitration. In August 2012, La Madeleine filed a motion to confirm the arbitration award. La Madeleine also filed a motion to strike Rodas's motion to vacate, complaining principally about the arbitration hearing transcripts Rodas attached to her motion.

Also in August 2012, Rodas served notices of intent to take depositions on written questions, with subpoenas, on La Madeleine's attorneys, and subpoenas for records on Gilbert

---

[1] In June 2010, Rodas filed a first amended petition in which she identified three new entities as defendants: La Madeleine de Corps, Inc., La Madeleine, Inc., and La Madeleine Management Company, Inc. We find nothing in the record indicating that these three entities were ever served with process or ever appeared in the case. We conclude that the only defendants and the only appellees in this case are La Madeleine of Texas, Inc. and Luis Blas.

and on the American Arbitration Association. In these discovery requests, Rodas sought, among other things, information about business, personal, and professional contacts between Gilbert and La Madeleine's law firm and attorneys. La Madeleine objected and moved to quash, and Gilbert filed a combined plea to the jurisdiction and motion to quash.

The trial court heard Gilbert's plea and motion on October 9, 2012. The trial judge orally denied Gilbert's plea to the jurisdiction and said she would hear the motion to quash on another day.

On May 20, 2013, the trial court heard La Madeleine's motion to confirm the arbitration award. During the hearing, however, the court limited its ruling to whether it would strike the arbitration proceeding transcript attached to Rodas's motion to vacate (an issue La Madeleine raised in its August 2012 motion to strike Rodas's motion to vacate). After the hearing, the trial court signed an order striking the transcript.

The next day, Rodas filed a "motion to compel subpoenas and discovery" in which she sought a court order compelling compliance with her discovery requests from August 2012. That motion was initially set for hearing on July 1, 2013. The hearing was postponed to August 5, 2013 and was subsequently canceled.

Later, on September 9, 2013, La Madeleine's counsel filed a hearing notice advising that a long list of matters would be heard on October 14, including Rodas's motion to compel, Rodas's motion to vacate the arbitration award, and La Madeleine's motion to confirm the arbitration award.

The trial court held a hearing on October 14, 2013. At the outset, the trial judge recited a list of matters to be heard at the hearing, including Rodas's motion to compel, Rodas's motion to vacate, and La Madeleine's motion to confirm. Rodas's attorney responded that she had not set her motion to vacate. Gilbert's counsel stated her understanding that the motion to vacate was

set. Rodas's counsel stated on the record that she did not want to proceed with her motion to vacate. The remainder of the hearing was devoted to arguments about the pending discovery matters.

At the hearing's end, the trial judge said, "On the defendants' motion to quash the deposition of Mr. Gilbert and Mr. Bassett [defendants' counsel], that motion is granted. On the plaintiff's motion to compel the deposition of Mr. Gilbert, that motion is denied. On the defendants' motion to confirm the arbitration ruling, that motion is granted."

On October 21, 2013, the trial judge signed separate orders denying Rodas's motion to compel and confirming the arbitration award. Rodas timely appealed.

## II. ANALYSIS

Rodas presents five issues on appeal. Rodas's third issue argues that the trial court abused its discretion by denying her motion to compel discovery regarding her evident partiality claim, which was the basis of her motion to vacate. Because that issue is meritorious and requires a reversal and remand, we do not address her other issues.[2]

### A. Standard of review

We review a trial court's discovery order for abuse of discretion. *See Tex. Mut. Ins. Co. v. Narvaez*, 312 S.W.3d 94, 103 (Tex. App.—Dallas 2010, pet. denied) ("Generally, the trial court has discretion to control the scope of discovery for the cases over which it presides."). The general rule is that a trial court abuses its discretion if it denies discovery going to the heart of a party's case or if that denial severely compromises a party's ability to present a viable defense. *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 663 (Tex. 2009).

---

[2] Rodas's other issues are: (1) the trial court erred by failing to make findings of fact and failing to supplement the clerk's record, (2) Rodas is entitled to remand because one volume of the reporter's record is wrong and the original recording has been destroyed, (3) the trial court erred by confirming rather than vacating the arbitration award, and (4) the trial court erred by striking Rodas's evidence of the arbitration hearing.

**B.  Applicable law**

**1.  What constitutes evident partiality that could justify vacating an arbitration award?**

The parties have litigated this case under the Federal Arbitration Act.  The FAA thus supplies the substantive rules of decision, but Texas law governs procedural issues.  *Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 804 (Tex. App.—Dallas 2008, pet. denied).  Under the FAA, an arbitrator's evident partiality is a ground for vacating an arbitration award.  *See* 9 U.S.C. § 10(a)(2).  To establish evident partiality, a party must show that the arbitrator failed to disclose facts that, to an objective observer, create a reasonable impression of the arbitrator's partiality.  *See Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 525 (Tex. 2014).

As we stated in *Karlseng v. Cooke*,

> A neutral arbitrator exhibits evident partiality if he does not disclose facts which might, to an objective observer, create a reasonable impression of the arbitrator's partiality. *Burlington N.R.R. v. TUCO, Inc.,* 960 S.W.2d 629, 630, 636 (Tex.1997). Evident partiality is established from the *nondisclosure itself,* regardless of whether the nondisclosed information necessarily establishes partiality or bias. *Id.* at 636. In adopting this broad concept of evident partiality, the supreme court explained that where parties agree to select an arbitrator, they can do so intelligently only if they have access to all information which might reasonably affect the arbitrator's partiality. *Id.* at 635. When the arbitrator discloses such information, the parties can evaluate any bias at the outset, "rather than shifting the burden to the courts to do so when a dissatisfied party challenges an award." *Id.* Finally, the court stressed the parties "should have access to all information that might reasonably affect the potential arbitrator's impartiality. In addition to a professional relationship, this could obviously include, for example, a familial or close social relationship." *Id.* at 637. Although an arbitrator need not disclose trivial relationships or connections, the "conscientious arbitrator should err in favor of disclosure." *Id.*

286 S.W.3d 51, 56 (Tex. App.—Dallas 2009, no pet.) (*Karlseng I*) (emphasis original).

Courts have found evident partiality in various situations.  Undisclosed business dealings between an arbitrator and persons or entities aligned with a party can support an evident partiality finding.  *See, e.g.*, *Tenaska Energy, Inc.*, 437 S.W.3d at 525–27; *Burlington N. R.R.*

*Co. v. TUCO Inc.*, 960 S.W.2d 629, 637–39 (Tex. 1997). An undisclosed personal, social, or professional relationship between an arbitrator and an attorney can also support an evident partiality finding. *See Karlseng v. Cooke*, 346 S.W.3d 85, 100 (Tex. App.—Dallas 2011, no pet.) (*Karlseng II*). And an arbitrator's failure to disclose that a party's representative has previously appeared before him as a party representative in a different arbitration may also be sufficient evidence of evident partiality. *See Alim v. KBR (Kellogg, Brown & Root)—Halliburton*, 331 S.W.3d 178, 182 (Tex. App.—Dallas 2011, no pet.).

**2. When is a party entitled to take post-arbitration discovery to investigate an evident partiality theory?**

The parties dispute a threshold legal question: Is a party who seeks to vacate an arbitration award automatically entitled to post-arbitration discovery, or must that party make a threshold evidentiary showing of grounds to vacate an award before being permitted to take related discovery? Rodas argues the former position, relying on ordinary civil cases expressing Texas's general policy in favor of "full, fair discovery." *See Ford Motor Co.*, 279 S.W.3d at 663. La Madeleine, however, cites *Karlseng I* as supporting the premise that Rodas needed to produce evidence of evident partiality before being allowed to take any discovery at all. We have found no statute or rule specifically addressing the availability of post-arbitration discovery in this context. *Cf.* TEX. CIV. PRAC. & REM. CODE ANN. § 171.086(a)(4) (West 2011) (authorizing court to order discovery *before* arbitration proceedings begin).

Turning to case law, we begin with *Karlseng I*. In that case, Cooke won a $22 million arbitration award against Karlseng and others and moved in district court to confirm that award. 286 S.W.3d at 53–54. The Karlseng parties, however, moved to vacate the award and, in the alternative, for a continuance to permit discovery into a possible relationship between the arbitrator and Cooke's lead attorney. *Id*. at 54. The trial court denied the continuance and confirmed the award. *Id*. at 55.

We reversed and remanded, holding that the trial court abused its discretion by denying the continuance. *Id*. at 56–58. First, we considered the usual factors relevant to a motion for continuance, such as the age of case, the materiality of the discovery sought, and the diligence of the movant, and we concluded that those factors favored the Karlseng parties. *Id*. at 56–57. We then considered the totality of the circumstances, including evidence of evident partiality that the Karlseng parties adduced even without the benefit of discovery. *Id*. at 57–58. In particular, the Karlseng parties had evidence of a social relationship between the arbitrator and Cooke's lead attorney, an expert's testimony that the relationship should have been disclosed, and another witness's testimony about a different arbitration involving the same attorney and arbitrator. *Id*. at 58.

We concluded that this evidence sufficed "to raise a bona fide question" of whether the arbitrator failed to disclose information that he had a duty to disclose under the evident-partiality standard. *Id*. We then held that the Karlseng parties were entitled to "an adequate opportunity to investigate" their evident-partiality theory, and that the trial court abused its discretion by denying the requested continuance to conduct post-arbitration discovery related to that issue. *Id*. A factor we considered in reaching that result was the Karlseng's existing evidence of potential evident partiality.

We find little other instructive Texas authority. In one case, the First Court of Appeals upheld a trial court's denial of post-arbitration discovery because the appellant failed to show how the requested discovery would have advanced its request to vacate the award. *Petrobras Am., Inc. v. Astra Oil Trading NV*, No. 01-11-00073-CV, 2012 WL 1068311, at *15 (Tex. App.—Houston [1st Dist.] Mar. 29, 2012, no pet.) (mem. op.); *see also Thomas James Assocs., Inc. v. Owens*, 1 S.W.3d 315, 322–23 (Tex. App.—Dallas 1999, no pet.) (trial court permissibly denied post-arbitration continuance for discovery into irrelevant matters).

In another case, we upheld a denial of post-arbitration discovery because the appellant was attempting to use discovery to create a record of the arbitration, which had not been recorded. *Glenn A. Magarian, Inc. v. Nat'l Fin. Corp.*, No. 05-97-00663-CV, 1999 WL 814289, at *5 (Tex. App.—Dallas Oct. 13, 1999, pet. denied) (not designated for publication).

Courts outside Texas have expressed varying positions regarding post-arbitration discovery. For example, one federal court said:

> Post-arbitration discovery is rare, and courts have been extremely reluctant to allow it. It is often a "tactic" employed by disgruntled or suspicious parties who, having lost the arbitration, are anxious for another go at it.

*Midwest Generation EME, LLC v. Continuum Chem. Corp.*, 768 F. Supp. 2d 939, 943 (N.D. Ill. 2010) (footnote omitted). Other courts have expressed similar positions. *See Woods v. P.A.M. Transp. Inc.–L.U.*, 440 F. App'x 265, 267–68 (5th Cir. 2011) (upholding denial of discovery, in part because party seeking discovery failed to produce any information at all to substantiate its ground for vacatur); *Provost v. Intrafusion Holding Corp.*, 926 F. Supp. 2d 532, 537 n.4 (D. Del. 2013) ("Courts have been understandably hesitant to grant extensive discovery in cases alleging arbitrator bias where the complaining party has not presented clear evidence of any impropriety."); *Frere v. Orthofix, Inc.*, No. 99CIV.4049(RMB)(MHD), 2000 WL 1789641, at *4 (S.D.N.Y. Dec. 6, 2000) (post-arbitration discovery "is available only in limited circumstances, where relevant and necessary to the determination of an issue raised by" an application to confirm or vacate an award); *Nat'l Hockey League Players' Ass'n v. Bettman*, No. 93 CIV. 5769 (KMW), 1994 WL 38130, at *3 (S.D.N.Y. Feb. 4, 1994) (permitting "limited discovery in a few narrowly defined areas"); *Kauffman v. Haas*, 318 N.W.2d 572, 574 (Mich. Ct. App. 1982) ("[O]nce an issue of partiality is fairly raised, limited discovery of the arbitrator should be allowed, focusing only on the relationship between the arbitrator and the other party.").

As discussed below, on the facts of this case, we need not choose between the parties' positions.

**C. Did the trial court abuse its discretion by denying Rodas all discovery?**

**1. Did Rodas show a basis for requesting her desired discovery?**

For purposes of this case, we may assume without deciding that Texas law requires a party to produce some evidence supporting vacatur before proceeding with post-arbitration discovery regarding that issue. We conclude that Rodas met that burden, and the trial court abused its discretion by denying all discovery directed towards Rodas's evident partiality theory.

The trial court held several post-arbitration hearings, during which lawyers for Gilbert and for La Madeleine admitted that one or two more arbitrations involving La Madeleine's law firm were assigned to Gilbert after Rodas began her arbitration and Gilbert made his disclosures but were not disclosed to Rodas. We summarize those hearings as follows.

At the October 2012 hearing, Rodas argued that Gilbert failed to disclose that about two months after Rodas's arbitration was filed he was appointed to arbitrate another case involving La Madeleine's law firm. Later in the hearing, the trial court addressed that allegation, and Gilbert's lawyer said:

> Well, that's discussed in the briefing. There was an arbitration assigned to Mr. Gilbert which subsequently settled and he had no hearings. . . . It was a clerical error, but it was not disclosed. That's correct. And I challenged them to show me a single case where evident partiality is found on that basis.

Soon after that hearing, La Madeleine filed a brief supporting its efforts to quash the subpoenas in which La Madeleine averred, "It is undisputed that Mr. Gilbert was later assigned as an arbitrator to another case involving the Bassett Firm while this arbitration was pending. It is undisputed that he did not disclose this assignment."

Then, in May 2013, there was a hearing on La Madeleine's motion to confirm the arbitration award. Rodas asserted that (i) Gilbert disclosed in her arbitration that he had

–9–

mediated cases and arbitrated one case with La Madeleine's counsel, (ii) two months after Rodas's arbitration commenced Gilbert was appointed in another arbitration involving La Madeleine's law firm, and (iii) Gilbert failed to disclose that new development. Later in that hearing, a La Madeleine's lawyer admitted that:

> They talk about another arbitration proceeding that started after this arbitration proceeding that was not disclosed by Mr. Gilbert. The fact of that is Mr. Gilbert was not appointed by Mr. Bassett [one of La Madeleine's lawyers]. There had to be an agreement to appoint an arbitrator. He served as an arbitrator for 17 days on that case, did not make a ruling, didn't so much as hold a hearing because the case settled right after it was initiated.

Gilbert's own attorney then said that there were actually two subsequent undisclosed arbitrations involving La Madeleine's firm:

> There is—I mean, there certainly was a failure on Mr. Gilbert's office, his secretary, to disclose another arbitration, the two other arbitrations. And one was in the file for 17 days. The other one was also settled. And I want to be careful about misrepresenting. I didn't look at that part before I came down here. I don't think there were any hearings in that other one either.

> Finally, the October 2013 hearing produced more statements about the undisclosed arbitrations. This hearing was devoted almost entirely to discovery-related motions. First, an attorney for Gilbert Mediation Group and Bench Mark Arbitration Services (companies apparently affiliated with Gilbert) addressed the undisclosed arbitrations as follows:

> What was not disclosed is simply two open matters. They weren't arbitrated. One open matter was approximately—it was open for approximately 16 days, one open matter. And the other open matter was open for only 34 days. And Mr. Gilbert was only paid about $1,300 in one of the two.
>
> . . .
>
> Here we just have two open matters and a clerical error, which is clearly not material.

Later in the hearing, a La Madeleine attorney described the undisclosed arbitrations differently:

> In each of those open matters that the plaintiff complains about that were subsequently opened after the arbitration began, the arbitrator made no substantive decisions. They both settled without any input from the arbitrator. The first matter was open for 15 days and the second matter the arbitrator issued a

scheduling order and it was opened for a period of 292 days and settled. No input from the arbitrator. In that case, it wasn't us that recommended Mr. Gilbert. It was the plaintiff in that case.

. . .

Here's what we think. If allowed, the—if allowed we assert that post-arbitration discovery should be limited to the two open matters.

Later in the October 2013 hearing, Rodas's counsel said that she needed to call Gilbert to the stand, but the trial court did not allow it. And still later in that hearing, an attorney for Gilbert individually stated, "What happened here is that Mr. Gilbert's staff failed to supplement a disclosure. It was a clerical error."

Throughout the hearing, Rodas repeatedly relied on the facts stated by the other attorneys to support her request for discovery. For example, she argued:

They—his attorneys have said that he did not disclose an arbitration. And now we're seeing there's another one, one I don't even know about, which is why we need the deposition and discovery of Mr. Gilbert so we can flush this out.

Because discovery is permissible if it is reasonably calculated to lead to the discovery of admissible evidence, *see* Tex. R. Civ. P. 192.3(a), and Rodas's requested discovery is directed at her evident partiality grounds for attempting to vacate the award, the proceedings described above support allowing her to conduct her requested discovery. Over the course of three hearings, attorneys for La Madeleine, for Gilbert, and for entities apparently related to Gilbert repeatedly admitted that Gilbert had failed to disclose one or two arbitrations involving La Madeleine's law firm and that Gilbert accepted during the pendency of Rodas's arbitration. Rodas was entitled to conduct reasonable discovery to flesh out all relevant undisclosed facts. *See Karlseng I*, 286 S.W.3d at 57–58.

### 2. Were opposing counsel's *unsworn* statements sufficient evidence to support Rodas's requests for discovery?

Nonetheless, citing *Banda v. Garcia*, 955 S.W.2d 270 (Tex. 1997) (per curiam), La Madeleine argues that the lawyers' unsworn statements cannot be considered as evidence. In

–11–

*Banda*, the trial court held a hearing on a defendant's motion to enforce a settlement agreement and rendered judgment for the defendant. *Id*. at 271. The *defendant's* timely acceptance of the settlement offer was proved at the hearing solely by unsworn statements at the hearing by the *defendant's* counsel. *Id*. at 271–72. The trial court enforced the settlement, but the court of appeals reversed, holding that the unsworn statements were not sufficient to establish a binding settlement agreement. The supreme court reversed the court of appeals, holding that the nonmovants waived the oath requirement by failing to object to the unsworn statements by the defendant's counsel. *Id*. at 272. According to *Banda*, a lawyer's unsworn statements can be treated as evidence if the lawyer makes the statements under circumstances in which the opposing party knows or should know that an objection is necessary. *Id.*

*Banda* does not help La Madeleine. In *Banda*, a party relied on his *own* lawyer's unsworn statements as evidence and was successful because the opponent did not object. Likewise, La Madeleine did not object to the lawyers' statements even though it relied on statements by its own counsel, and attorneys aligned with its position, to argue that Rodas should not be entitled to take discovery because the contacts between Gilbert and La Madeleine's attorney were trivial. La Madeleine itself thus intended for the trial court to rely on these statements as reasons to *deny* Rodas's discovery requests. Had La Madeleine not wanted the trial court to rely on these unsworn statements, it should have not made or silently approved them. Or it should have objected when they were made. But no one did. If the unobjected to self-serving statements in *Banda* were proper evidence, then Rodas could properly rely on as evidence the unobjected to statements by her opponent's lawyers and lawyers aligned with her opponent.

–12–

### 3. Did Rodas need to request a continuance?

La Madeleine also argues that we should affirm because Rodas did not seek to continue the hearing on her motion to vacate and La Madeleine's motion to confirm. Rodas argues that she did not need to request a continuance, relying on *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 662–63 (Tex. 2009). We agree. The trial court did not permit Rodas to conduct any discovery about evident partiality. Thus, continuing Rodas's motion to vacate and La Madeleine's motion to confirm would have served no purpose, because Rodas would not have been able to conduct discovery during the postponement anyway.

The situation is like that in *Ford Motor Co.* where Castillo and others sued Ford and the case settled while the jury was deliberating. *Id.* at 659. But then Ford obtained information suggesting juror misconduct and filed a "Motion to Delay Settlement" so that it could conduct discovery on that issue. *Id.* at 659–60. The trial court denied that motion. *Id.* at 660. Castillo filed a motion to enforce the settlement and then filed a motion for summary judgment for breach of contract. *Id.* The trial court granted summary judgment for Castillo, and the court of appeals affirmed. *Id.* at 661. The Texas Supreme Court reversed, holding that Ford was not required to request a continuance of the summary-judgment hearing to preserve error. *Id.* The trial court had already denied Ford's request to conduct any discovery, so a continuance of the summary-judgment hearing would have served no purpose other than to delay the proceedings. *Id.*

Similarly, in this case, the trial court denied Rodas any discovery on the evident-partiality issue. Since Rodas would not have been able to conduct discovery during a continuance anyway, requesting a continuance would have been pointless. On the facts of this case, Rodas was not required to request a continuance to preserve her argument that the trial court erred by denying her any opportunity to conduct discovery.

–13–

**D.  Conclusion**

The trial court abused its discretion by denying Rodas's request to take discovery. Accordingly, we resolve Rodas's third issue on appeal in her favor, and we do not address her remaining issues. *See Karlseng I*, 286 S.W.3d at 58; TEX. R. APP. P. 47.1.

### III.  DISPOSITION

We reverse the trial court's order confirming the arbitration award and remand for further proceedings consistent with this opinion.


140054F.P05

/Bill Whitehill/
BILL WHITEHILL
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

FATIMA DOLORES RODAS, Appellant

No. 05-14-00054-CV        V.

LA MADELEINE OF TEXAS, INC. AND
LUIS BLAS, Appellees

On Appeal from the 162nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 10-04672.
Opinion delivered by Justice Whitehill.
Justices Lang and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for proceedings consistent with the opinion.

It is **ORDERED** that appellant FATIMA DOLORES RODAS recover her costs of this appeal from appellees LA MADELEINE OF TEXAS, INC. AND LUIS BLAS.

Judgment entered April 10, 2015.