## BUCKEYE RETIREMENT CO., LLC, LTD., Appellant,

v.

## BANK OF AMERICA, N.A., Appellee.

No. 05–06–01136–CV.

Court of Appeals of Texas, Dallas.

Oct. 26, 2007.

Rehearing Overruled Nov. 26, 2007.

Bruce K. Thomas, Law Office of Bruce K. Thomas, Dallas, TX, for appellant.

Eric Scott Lipper, Michael D. Conner, Olyn Poole, Hirsch & Westheimer, P.C., Houston, TX, for appellee.

Before Justices MORRIS, BRIDGES, and O'NEILL.

## OPINION

Opinion by Justice O'NEILL.

In this garnishment case, the trial court determined appellee Bank of America, N.A. (the "Bank") did not possess any property of the judgment debtor relevant to the garnishment proceeding. On appeal, appellant Buckeye Retirement Co., LLC, LTD. ("Buckeye") alleges (1) the trial court erred in striking its first amended petition; (2) the trial court erred in limiting certain discovery; (3) the trial court erred in failing to apply a spoliation presumption in its favor; (4) the evidence is legally and factually insufficient to support the trial court's finding that the Bank was not in possession of any property of judgment debtor Thomas J. Lykos, Jr.; and (5) the trial court erred in failing to make findings of fact and conclusions of law concerning spoliation. In a cross-issue, the Bank claims it is entitled to recovery of its attorneys' fees. We affirm the trial court's judgment.

### Factual Background

Buckeye obtained a judgment against Dale C. Bullough and Thomas J. Lykos, Jr. ("Thomas") for approximately $4.6 million in a separate lawsuit. Buckeye obtained a writ of garnishment against the Bank for Thomas J. Lykos, Jr.'s accounts and assets. In the Bank's answer to the writ of garnishment, it stated on May 17, 2004 "garnishee was in possession of two safe deposit boxes possibly belonging to Thomas J. Lykos, Jr. and Irene D. Lykos" in Houston and Dallas. On July 1, 2004 the trial court ordered the Bank to open and inventory the contents of both boxes. The Houston box was empty.

Buckeye later learned the Bank had allowed Irene D. Lykos, Thomas's mother, access to the Houston safe deposit box on June 8 and 9. During this time, she removed the box's contents and closed the account. Believing the Bank violated the court's garnishment order, Buckeye asked the trial court to sever the claims related to the Houston box from those of the Dallas box. The trial court severed the cause of action and held a bench trial to determine whether the Houston box contained any property belonging to Thomas, which Irene improperly removed without the Bank's intervention. After a bench trial, the trial court entered a take nothing judgment against Buckeye, along with findings of fact and conclusions of law. This appeal followed.

### Standard of Review

We first address the challenge to the sufficiency of the evidence. Garnishment is a proceeding in which the property, money, or credits of a debtor that are in possession of another-the garnishee-are applied to the payment of a debt. *Bank One, Tex., N.A. v. Sunbelt Sav., F.S.B.,* 824 S.W.2d 557, 558 (Tex.1992); *HTS Servs., Inc. v. Hallwood Realty Partners, L.P.,*

190 S.W.3d 108, 112 (Tex.App.-Houston. [1st Dist.] 2005, no pet.). The garnishor may enforce against the garnishee any rights the debtor could have enforced had he sued the garnishee directly. *HTS Servs., Inc.*, 190 S.W.3d at 112. The primary issue in a garnishment suit is whether the garnishee is indebted to, or has in its possession effects belonging to the debtor. *Id.*

▪ When reviewing a case tried to the bench where findings of fact and conclusions of law have been entered, findings of fact have the same force and effect as jury findings. *Young v. Young*, 168 S.W.3d 276, 280–81 (Tex.App.-Dallas 2005, no pet.). The applicable standard of review is the same as that applied in the review of jury findings. *Id.*

▪ When appealing the legal sufficiency of the evidence supporting an adverse finding on which appellant had the burden of proof, it must show the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In reviewing a "matter of law" challenge, we must first examine the record for evidence supporting the finding, then we will examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* The point of error should be sustained only if the contrary proposition is conclusively established. *Id.*

▪ When a party attacks the factual sufficiency of an adverse finding, it must demonstrate the adverse finding is against the great weight and preponderance of the evidence. *Id.* We must consider and weigh all of the evidence and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.* In a bench trial the court, as trier of fact, judges the witnesses, assigns the weight to be given their testimony, and resolves any conflicts or inconsistencies in the testimony. *LaCroix v. Simpson*, 148 S.W.3d 731, 734 (Tex.App.-Dallas 2004, no pet.).

### Sufficiency of the Evidence

▪ In its fourth issue, the Bank alleges the evidence is legally and factually insufficient to support the trial court's findings that the Bank was not in possession of Thomas's property. Specifically, it contends the only evidence provided was from an interested witness, Thomas's mother, which cannot be considered credible.

Buckeye challenges the following trial court findings:

(1) Nothing in the box at Bank of America San Felipe banking center in Houston, Texas was the property of Thomas Lykos, Jr. There was no contrary evidence.

(2) Thomas Lykos, Jr. had no property or other thing of value at the Bank of America San Felipe banking center in Houston, Texas, at any material time.

(3) No property or thing of value belonging to Thomas Lykos, Jr. was removed from the Bank of America San Felipe banking center in Houston, Texas.

(4) Thomas Lykos, Jr. was never a signatory for the safe deposit box located at the Bank of America San Felipe banking center in Houston, Texas.

(5) Thomas Lykos, Jr. did not have authority to access the safe deposit box located at the Bank of America San Felipe banking center Houston, Texas.

(6) Bank of America is not now indebted to Thomas Lykos, Jr., one of the two named Judgment Defendants in the writ of garnishment, as a result of the judgment in cause number 04–4336–C.

The parties provided evidence through two witnesses' deposition testimony. Thomas's mother, Irene, testified she had owned the Houston safe deposit box for over twenty years. She usually accessed it every three to six months. Although she admitted her son was listed as a signatory on the box, along with her husband and other son, she testified they were listed because she felt someone besides her and her husband should have access in the event something happened to them. She admitted she visited the Bank in May and June because she wanted to remove jewelry[1] and birth certificates and close the account. After closing the account, she moved the box's contents to Sterling Bank. Thomas was not a signatory on the new account.

She testified she holds none of Thomas's property under her name, nor does he have any of her property under his name. They do not own any joint banking accounts. She also stated nothing in the box belonged to her son; it was all her personal property. Buckeye presented no evidence to contradict Irene's testimony that the contents of the box belonged only to her. Despite Buckeye's allegation that Irene was not a credible witness, the trial court, as fact finder, was the sole judge of her credibility and the weight to be given her testimony. *LaCroix*, 148 S.W.3d at 734.

Further, the court heard testimony from Aisha Ahmad, a Bank employee who assisted Irene with the box. She stated she did not remember dealing with anyone besides Irene. After reviewing the record, we conclude the testimony of Irene and Aisha regarding ownership of property in the box provided the trial court with legally and factually sufficient evidence to support findings 1, 2, 3 and 6.

In challenging findings 4 and 5, Buckeye claims (1) the Bank judicially admitted in its answer Thomas was a joint account holder for the Houston box; (2) the signature card and account application show Thomas as a co-account holder and signatory; and (3) Irene testified Thomas was a signatory. After reviewing the record, we conclude the trial court correctly determined there was no evidence to support Thomas had access to the box and such a finding is not against the great weight and preponderance of the evidence.

First, although the Bank stated in its May 17, 2004 answer, "garnishee was in possession of two safe deposit boxes possibly belonging to Thomas J. Lykos, Jr," the Bank did not judicially admit Thomas was a joint account holder. It merely stated it was *possibly* in possession of such a box, not that it knew it had possession of property. Thus, the trial court was free to disregard this as evidence of ownership of the box or any of its contents.

Second, the signatory card does not provide sufficient evidence to overcome the trial court's findings. We recognize the signatory card, in typewriting, lists Irene, her husband, and two sons as authorized signatures on the account. However, the only actual handwritten signature that appears next to any of the names is Irene's. Further her signature is the only one that appears on the card as a person who previously accessed the box. Buckeye presented no evidence that Thomas ever signed and entered the box.

Besides the signatory card, the account application also fails to establish Thomas had authorized access to the box. Buckeye again relies on the fact that his name appears on the application as a "lessee." The application, however, only has Irene's

---

**1.** A number of rings, lockets, pearls, bracelets, pendants, and a gold chain were in the box. She estimated it was worth between five thousand and eight thousand dollars.

signature. Furthermore, Irene never signed the portion of the application designating access to another individual. Thus, the trial court could have considered these documents and determined Thomas was not a signatory to the box, nor did he have access to it.

Finally, although Irene testified her son was a signatory on the box, the trial court as the sole arbiter of evidence, was free to give this testimony such weight as it deemed appropriate. *Id.* She specifically testified the reason she listed her sons on the box was because she felt someone besides her and her husband should have access to it in case something happened to them. She never said it was for storage of Thomas's personal belongings. In fact, she specifically testified all the property in the box belonged to her. Thus, the trial court was free to rely on the bank documents, rather than the testimony of a lay witness.

After reviewing the record, we conclude the evidence is legally and factually sufficient to support findings 4 and 5—that Lykos was not a signatory on the safe deposit box, nor did he have authority to access it. Further, we likewise conclude the trial court properly drew correct legal conclusions based on the facts before it. *See Dallas County v. Sweitzer,* 881 S.W.2d 757, 763 (Tex.App.-Dallas 1994, writ denied) (conclusions of law are reviewed de novo, and an appellate court reviews legal conclusions drawn from the facts to determine their correctness). Thus, we overrule Buckeye's arguments regarding the conclusions of law. Accordingly, we overrule Buckeye's fourth issue.

### Spoliation Presumption

Buckeye contends in its third issue the trial court erred in failing to apply a spoliation presumption in its favor because the Bank had a duty to safeguard the contents of the Houston safe deposit box, and by wrongfully allowing Irene to remove the contents, the court should have presumed the box's contents were sufficient to satisfy the judgment. The Bank responds if a spoliation presumption was appropriate, it was overcome by evidence establishing that none of the property in the box belonged to Thomas.

▆▆▆▆ The doctrine of spoliation refers to the improper destruction of evidence relevant to a case. *Cresthaven Nursing Residence v. Freeman,* 134 S.W.3d 214, 225 (Tex.App.-Amarillo 2003, no pet.); *see also Trevino v. Ortega,* 969 S.W.2d 950, 954 (Tex.1998) (Baker, J., concurring). Trial courts have broad discretion to take measures to correct the ill effects resulting from spoliation, including a jury instruction on the spoliation presumption and death penalty sanctions. *Cresthaven Nursing Residence,* 134 S.W.3d at 225. When considering an appropriate remedy, a trial court relies on the factors set forth in Justice Baker's concurring opinion in *Trevino,* which are (1) whether there was a duty to preserve evidence, (2) whether the alleged spoliator negligently or intentionally spoliated evidence, and (3) whether the spoliation prejudiced the nonspoliator's ability to present its case. *Id.* at 954–55.

▆▆▆▆ The intentional destruction or spoliation of evidence relevant to a case may, in the trial court's discretion, give rise to a presumption that the destroyed evidence would not have been favorable to its destroyer. *Ordonez v. M.W. McCurdy & Co., Inc.,* 984 S.W.2d 264, 273 (Tex.App.-Houston [1st Dist.] 1998, no pet.). The presumption may be rebutted by a showing that the evidence in question was not destroyed with a fraudulent purpose or intent. *Id.; see also Trevino,* 969 S.W.2d at 960 (noting presumption does not automatically disappear when spoliating party

offers evidence rebutting the issue, but rather it is overcome when the fact finder believes the presumed fact has been overcome by the necessary amount of contradictory evidence).

■■■ Assuming without deciding that Buckeye established the three elements entitling it to a spoliation presumption, the trial court heard legally and factually sufficient evidence, as detailed above, rebutting the presumption that the Bank destroyed evidence. Although Buckeye again challenges the credibility of Irene's testimony to overcome the presumption, the trial court was the sole judge of her credibility and the weight to be given her testimony. *LaCroix*, 148 S.W.3d at 734. Further, we presume the trial court knew and correctly applied the law regarding spoliation and determined that if the presumption applied, it was overcome by the evidence. *Coons–Andersen v. Andersen*, 104 S.W.3d 630, 638 (Tex.App.-Dallas 2003, no pet.). Thus, we overrule Buckeye's third issue.

### Failure to Make Spoliation Findings of Fact and Conclusions of Law

■■■ In its fifth issue, Buckeye claims the trial court erred in failing to enter findings of fact and conclusions of law concerning spoliation. In any case tried in the district or county court without a jury, any party may request the trial court to state in writing its findings of fact and conclusions of law. TEX.R. CIV. P. 296.; *Hoffmann v. Dandurand*, 143 S.W.3d 555, 559 (Tex.App.-Dallas 2004, no pet.). After a trial court enters its original findings of fact and conclusions of law, any party may request additional or amended findings and conclusions. TEX.R. CIV. P. 298. A trial court is required to enter additional findings only on ultimate or controlling issues. *Id.* An ultimate fact issue is one that is essential to the cause of action and that would have a direct effect on the

judgment. *Gen. Elec. Capital Corp. v. ICO, Inc.*, 230 S.W.3d 702, 711 (Tex.App.-Houston [14th Dist.] 2007, pet. denied) ("The controlling issue is whether the circumstance of the particular case would require an appellant to guess the reasons for the trial court's judgment."). A trial court is not required to make additional findings of fact that are unsupported in the record, that are evidentiary, or that are contrary to other previous findings. *Hoffmann*, 143 S.W.3d at 559.

Having determined the evidence was sufficient to support the trial court's findings that Thomas did not own property in the safe deposit box or have access to it, Buckeye's requested findings on spoliation would have been unsupported by the record. In addition, the ultimate fact issue for the trial court was whether the Bank was in possession of Thomas's property, not whether the Bank spoliated evidence; therefore, the court was not required to make the requested findings. Further, because spoliation is an evidentiary issue, findings of fact would not have been appropriate. Accordingly, we overrule Buckeye's fifth issue.

### Striking First Amended Petition

In its first issue, Buckeye alleges the trial court abused its discretion in striking its timely-filed first amended petition, in which it added claims for negligence, gross negligence, negligence per se, and constructive trust because of the Bank's alleged spoliation of evidence. The Bank argues the petition was not timely filed; therefore, the trial court properly struck it.

■■ Assuming without deciding that the trial court erred in denying the amended pleading, Buckeye cannot establish the error probably caused the rendition of an improper judgment. TEX.R.APP. P. 44.1(a). The issue in this garnishment proceeding

centered on whether the Bank had Thomas's property in its possession. The trial court properly determined the Bank did not have any of Thomas's property that Buckeye could claim to satisfy the underlying judgment. Therefore, any claims involving negligence, gross negligence, negligence per se, or constructive trust based on alleged spoliation of evidence are irrelevant. Without any of Thomas's property in the box, Buckeye had no legitimate claim for any negligence based on the Bank's actions towards property that did not exist. As such, Buckeye cannot establish that any presumed error by the trial court probably caused the rendition of an improper judgment. TEX.R.APP. P. 44.1(a); see, e.g., Mackey v. U.P. Enter., Inc., 935 S.W.2d 446, 461–62 (Tex.App.-Tyler 1996, no writ) (holding error harmless when trial court denied party's third amended petition because it would not have provided any actual or theoretical basis for overcoming summary judgment). We overrule Buckeye's first issue.

### Limiting Discovery

In its second issue, Buckeye alleges the trial court abused its discretion in limiting discovery. Buckeye specifically complains (1) the trial court erred in sustaining objections to interrogatory two, which prevented it from inquiring into the steps and procedures the Bank followed after it received the writ of garnishment; (2) it improperly limited Buckeye to one one-hour deposition; and (3) the Bank denied Buckeye access to camera surveillance videos.

Interrogatory two asked the Bank to "state the date you received the writ of garnishment that is the subject of the instant suit and state all procedures you instituted based upon the receipt of the writ by stating the date and time of each act." In a hearing on its motion to compel, Buckeye argued it needed information on bank procedures to determine why the Bank allowed Irene access to the box and whether the box contained any property other than what she identified in her deposition.

As noted previously, the purpose of a garnishment action is to determine whether the Bank has property of the judgment debtor in its possession that may be used to satisfy a judgment. *HTS Servs., Inc.*, 190 S.W.3d at 112. Thus, in determining whether the trial court abused its discretion in limiting discovery, we must decide whether Buckeye was denied requests for information that could have been relevant to the Bank's possible possession of Thomas's property. TEX.R. CIV. P. 192.3(a) ("A party may obtain discovery regarding matters that are not privileged and are relevant to the subject matter of the pending action."); *Brewer & Pritchard, P.C. v. Johnson*, 167 S.W.3d 460, 467 (Tex.App.-Houston [14th Dist.] 2005, pet. denied) (purpose of discovery is to seek the truth so that disputes may be decided by what the facts reveal, not by what facts are concealed).

The trial court correctly concluded the Bank's internal procedures were irrelevant to the ultimate garnishment issue. The reasons behind why the Bank allowed Irene access to the box would not help Buckeye obtain information regarding the contents of the box. Further, Buckeye had already taken Irene's deposition and learned that the only property in the box belonged to her. Thus, the Bank could not provide any further information on what else might have been in the box. On the record before us, we cannot say the trial court acted unreasonably or arbitrarily in denying Buckeye's request for further information on interrogatory number two. *Crooks v. Moses*, 138 S.W.3d 629, 642 (Tex. App.-Dallas 2004, no pet.) (holding trial

court's discovery rulings are governed by an abuse of discretion standard).

■ Buckeye also complains that by limiting its deposition time to one hour for Aisha Ahmad, the trial court prevented it from deposing a single current bank employee with knowledge of relevant facts. Buckeye, however, has again failed to establish how any depositions of current employees regarding internal procedures would establish the contents of Irene's box for purposes of the garnishment. In her deposition, Aisha testified the employees do not watch customers remove or place items in the box. Therefore, it would be unnecessary to depose other bank employees to determine if they knew the contents of Irene's box. Furthermore, Aisha testified she was the employee who assisted Irene with her box. Thus, the trial court did not abuse its discretion in limiting depositions.

Finally, Buckeye asserts the Bank wrongfully withheld information from surveillance videos that could have shown Irene entering and leaving the Bank, possibly with her son or with substantial property such as gold bars or a cart full of money. Of the fifteen interrogatories, those relating to a surveillance video (numbers 5, 8, 9, and 10) are the only ones that could have possibly produced evidence as to whether the Bank had Thomas's property in its possession. However, the trial court did not deny Buckeye access to this information. Rather, it ordered the Bank to produce such information if it existed and was in its possession; if it was not, then the trial court told the Bank to simply state it had no video surveillance cameras in the branch.[2]

Buckeye clearly felt the Bank was untruthful in its claim that it used no cameras at this branch and pointed the trial court to certain alleged discrepancies in the Bank's interrogatory answers. Specifically, Buckeye noted the Bank first took the position it had no cameras in the safe deposit box area and any exit camera surveillance was overwritten after ten days. Later at the discovery hearing, the Bank said its branch had no cameras at all, despite its earlier interrogatory answers. The Bank answered the interrogatories regarding surveillance stating "... there was no dedicated camera surveillance for the safe deposit vault at this location. Exit camera surveillance is retained for 10 days and then is automatically overwritten on the Securvision hard drive."

Regardless of its contradictory positions, it is clear from the hearing the Bank did not have surveillance videos of this incident: (1) either this specific branch did not have cameras, or (2) if it did have them, any video had long been overwritten by the Securvision. But, as noted previously, the trial court still ordered the Bank to provide such information, if it existed. Thus, the trial court did not limit Buckeye's discovery of surveillance videos.

Based on the thorough discussion in the record regarding the surveillance interrogatories, we cannot say the trial court abused its discretion by limiting discovery or denied Buckeye a fair opportunity to develop its case as it related to the contents of Irene's safe deposit box. We overrule Buckeye's second issue.

Having overruled all of Buckeye's issues, we now turn to the Bank's cross-issue.

---

**2.** Although it struck the trial court as odd that a bank in this day and age would not have any surveillance cameras, the Bank acknowl-edged this particular branch was old, and the court accepted this explanation.

## Attorneys' Fees

In one cross-issue, the Bank asserts it is entitled to attorneys' fees under Texas Rule of Civil Procedure 677 because it prevailed on a "contested" answer.[3] Buckeye responds the answer was not contested, and even if it was, rule 677 does not provide for the recovery of attorneys' fees in a severed action to resolve a spoliation issue, particularly one created by the Bank's actions.

 Regardless of how Buckeye tries to present its case, it is a garnishment proceeding. Rule 677 governs cost allocation in these proceedings and states:

> Where the garnishee is discharged upon his answer, the costs of the proceeding, including a reasonable compensation to the garnishee, shall be taxed against the plaintiff; where the answer of the garnishee has not been controverted and the garnishee is held thereon, such costs shall be taxed against the defendant and included in the execution provided for in this section; where the answer is contested, the costs shall abide the issue of such contest.

TEX.R. CIV. P. 677; *Gen. Elec. Capital Corp.*, 230 S.W.3d at 710. The term "costs" in this rule has repeatedly been interpreted as including attorneys' fees. *See id.; Rowley v. Lake Area Nat'l Bank*, 976 S.W.2d 715, 721 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). Further, this court along with other courts have interpreted the language regarding a contested answer to allow the garnishee to recover its costs when the garnishee is the prevailing party. *Rowley*, 976 S.W.2d at 721; *Carter v. Leiter*, 476 S.W.2d 461, 463 (Tex.Civ.App.-Dallas 1972, writ ref'd n.r.e.).

Here, the first clause of rule 677 does not apply because the Bank was not discharged on its answer. The second clause does not apply because the Bank was not found liable on its answer; therefore, we look to the third clause to determine the appropriateness of fees. The Bank's answer to the writ of garnishment put in issue the true ownership of any items contained in Irene's safe deposit box. As of May 17, 2004, the Bank stated it was in possession of two safe deposit boxes "possibly" belonging to Thomas. We conclude this statement created a contested issue in the answer. "Where the answer is contested, the costs shall abide the issue of such contest." TEX.R. CIV. P. 677. Therefore, as the prevailing party, the Bank has a right to recover its attorneys' fees from Buckeye. *Rowley*, 976 S.W.2d at 721; *Carter*, 476 S.W.2d at 463.

 The Bank presented evidence that it incurred reasonable fees through trial in the amount of $27,000. The fixing of a reasonable fee is a matter within the sound discretion of the trial court, but in this case the trial court did not fix such a fee. In fact, in its proposed findings of fact and conclusions of law, the Bank included a finding and conclusion that it had incurred reasonable and necessary fees in the amount of $27,000; however, the trial court specifically omitted this finding and conclusion when it entered the final findings of fact and conclusions of law. The Bank did not then object or request additional findings and conclusions under Texas Rule of Civil Procedure 298. TEX.R. CIV. P. 298. Consequently, although the Bank may have been entitled to reasonable attorneys' fees under rule 677, it has waived the issue. *See Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 708

---

**3.** In the final judgment, the trial court stated each party was responsible for its own fees and costs.

(Tex.App.-Fort Worth 2006, pet. denied) (party waived mitigation defense after failing to request additional findings of fact and conclusions of law); *Smith v. Smith,* 22 S.W.3d 140, 149 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (party waived his right to complain on appeal about any error he assumed the court made by failing to request additional findings of fact and conclusions of law).

We overrule the Bank's cross-issue and affirm the trial court's judgment.