**Affirmed and Memorandum Opinion filed January 31, 2012.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-10-00765-CV

---

### DARYL AARON, Appellant

### V.

### KIMBERLY AARON, Appellee

---

**On Appeal from the 312th District Court
Harris County, Texas
Trial Court Cause No. 2009-03689**

---

## MEMORANDUM OPINION

Appellant Daryl Aaron appeals the property division incident to the divorce between himself and appellee Kimberly Aaron. Daryl challenges the legal and factual sufficiency of the evidence supporting certain findings of fact and conclusions of law made by the trial court. We affirm.

### BACKGROUND

Daryl and Kimberly began living together in May 28, 1999, when they moved into a house known as the "Green Top Residence." Kimberly's three minor children from a prior marriage lived with Daryl and Kimberly. Daryl and Kimberly married on

December 15, 2001, and separated on July 31, 2008. There were no children as result of the marriage.

Daryl filed a petition for divorce on January 23, 2009, and Kimberly filed a cross-petition for divorce on January 18, 2010. The trial court conducted a bench trial on February 1, 2, and 22, 2010; March 9, 2010; and April 9, 2010. On April 14, 2010, the trial court provided its findings and its ruling. On May 4, 2010, Daryl filed a motion to modify, correct, and/or reform the judgment. On May 14, 2010, the trial court entered the final decree of divorce. On June 14, 2010, Daryl filed a motion for new trial, which the trial court denied on July 14, 2010.

On June 3, 2010, Daryl requested findings of fact and conclusions of law. When the trial court did not enter findings of fact and conclusions of law, Daryl timely filed a notice of past due findings of fact and conclusions of law on July 2, 2010. Daryl filed his notice of appeal on August 11, 2010. On December 30, 2010, the trial court issued its findings of fact and conclusions of law. On January 26, 2011, Daryl filed a motion to extend time to file his request for amended or additional findings of fact and conclusions of law, which the trial court granted on January 28, 2011, extending the time to file the request to January 31, 2011. On January 28, 2011, Daryl filed a request for additional and/or amended findings of fact. The trial court never explicitly ruled on Daryl's request.

STANDARD OF REVIEW

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's verdict on jury questions. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We apply the same standards in reviewing the legal and factual sufficiency of the evidence supporting the trial court's fact findings as we do when reviewing the legal and factual sufficiency of the evidence supporting a jury's answer to a jury question. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam).

In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the fact finding, crediting favorable evidence if reasonable

2

persons could, and disregarding contrary evidence unless reasonable persons could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005). We may not sustain a legal sufficiency, or "no evidence" point unless the record demonstrates that: (1) there is a complete absence of a vital fact; (2) the court is barred by the rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence to prove a vital fact is no more than a scintilla; or (4) the evidence established conclusively the opposite of the vital fact. *Id.* at 810.

To evaluate the factual sufficiency of the evidence to support a finding, we consider all the evidence and will set aside the finding only if the evidence supporting the finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

When an appellant complains of the legal sufficiency of the evidence supporting an adverse finding on which the appellant had the burden of proof, he must show the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). In reviewing a "matter of law" challenge, we must first examine the record for evidence supporting the finding, and then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* We sustain the issue only if the contrary position is conclusively established. *Id.*

When an appellant attacks the factual sufficiency of an adverse finding, he must demonstrate the adverse finding is against the great weight and preponderance of the evidence. *Id.* We must consider and weigh all the evidence and can set aside the finding only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

3

We review the trial court's conclusions of law de novo. *Busch v. Hudson & Keyse, LLC*, 312 S.W.3d 294, 299 (Tex. App.—Houston [14th Dist.] 2010, no pet.). We review conclusions of law to determine whether the conclusions drawn from the facts are correct. *Zagorski v. Zagorski*, 116 S.W.3d 309, 314 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g). Even if we determine that the trial court made an erroneous conclusion of law, we will not reverse if the trial court rendered the proper judgment. *Busch*, 312 S.W.3d at 299. We uphold conclusions of law if the judgment can be sustained on any legal theory supported by the evidence. *Id.*

We review a trial court's division of community property for an abuse of discretion. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981); *Quijano v. Quijano*, 347 S.W.3d 345, 349 (Tex. App.—Houston [14th Dist.] 2011, no pet.). To determine whether the trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles, i.e., whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 240–41 (Tex. 1985). We must indulge every reasonable presumption in favor of the trial court's proper exercise of its discretion in dividing the marital property. *Mandell v. Mandell*, 310 S.W.3d 531, 539 (Tex. App.—Fort Worth 2010, pet. denied). Generally, there is no abuse of discretion where some evidence of a substantive and probative character exists to support the trial court's decision. *Swaab v. Swaab*, 282 S.W.3d 519, 525 (Tex. App.—Houston [14th Dist.] 2008, pet. dism'd w.o.j.).

In a divorce decree, the trial court "shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE ANN. § 7.001 (West 2006). The trial court's ultimate division need not be equal as long as it is equitable and the circumstances justify a disproportionate division. *Phillips v. Phillips*, 296 S.W.3d 656, 678 (Tex. App.—El Paso 2009, pet. denied).

4

By this appeal, Daryl challenges the trial court's property division, urging generally that the trial court erred in failing to properly treat certain property as separate property; failing to credit community debts; and determining that Daryl committed a fraud on the community. Kimberly responds that the trial court's division is supported by legally and factually sufficient evidence and, in any event, the appeal should be dismissed for Daryl's acceptance of benefits from the decree.

**Acceptance of Benefits**

Kimberly urges that the appeal should be dismissed in its entirety because Daryl has voluntarily accepted the benefits of the decree and is therefore estopped to appeal that same decree. It is true that a party may not take inconsistent positions with respect to a judgment; instead, he must either treat the judgment as correct to accept a benefit from it or treat the judgment as incorrect to appeal it. *See Waite v. Waite*, 150 S.W.3d 797, 803 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). There are narrow exceptions to the doctrine. For example, where the appellant accepts only benefits that the appellee concedes or must concede are due, the doctrine does not estop appellant to appeal the judgment. *See Carle v. Carle*, 234 S.W.2d 1002, 1004 (Tex. 1951). The appellee has the burden to establish acceptance of benefits. *Waite*, 150 at 803.

In this case, Kimberly points not to evidence, but to remarks from Daryl's counsel during a hearing. Specifically, counsel indicated to the trial court regarding Daryl's ability to sell his Dodge truck that she "think[s] it's already gone." Kimberly has presented no evidence that the truck or any other divided property has been sold. The comments of counsel in this case are insufficient to sustain Kimberly's burden on acceptance of benefits. As Kimberly has failed to establish acceptance of benefits, we need not determine whether any of the exceptions to the doctrine apply. We deny Kimberly's request to dismiss the appeal.

5

## Green Top Residence

In his first issue, Daryl contends that the evidence is legally and factually insufficient to support the trial court's findings of fact and conclusions of law that the Green Top residence had been jointly acquired by Daryl and Kimberly prior to marriage and therefore the award of an undivided one-half interest as separate property to Kimberly was error. The Green Top Residence was acquired on May 28, 1999, prior to Daryl and Kimberly's marriage. Daryl and Kimberly planned to purchase the Green Top Residence together and, on April 23, 1999, they signed an earnest money contract for the purchase of the home. However, Kimberly learned that her credit was poor and that they could purchase the home for a lower interest rate if the home were purchased in Daryl's name alone. Daryl alone signed a second earnest money contract and the closing documents were in Daryl's name alone.

Kimberly testified that, even though the home was to be purchased in Daryl's name alone, they still had an agreement to be joint owners of the Green Top Residence. Because Kimberly was not able to contribute as much towards the down payment as Daryl, Daryl paid a down payment of $6,700. An additional $1,366.04 was required for closing costs. The parties dispute who paid the additional $1,366.04. The $1,366.04 check showed Daryl as the remittur, but Kimberly testified that she provided the funds, and Daryl told her to put his name as remittur on the check because all the closing documents were in his name alone. To make up for Daryl's having paid more of the down payment on the house, Kimberly paid the mortgage and utilities for the first six months while Daryl was selling a house he had owned previously. After Daryl had sold his house, he started making the Green Top mortgage payments, while Kimberly paid for the food and the utilities. Kimberly testified that the amount she paid monthly for food and utilities would be about the same as the monthly mortgage payment. Daryl, on the

6

other hand, argued that, because he acquired the Green Top residence prior to marriage, it is his separate property,[1] and the trial court was prohibited from dividing that property.[2]

The trial court found that, even after Daryl and Kimberly had decided that the house would be purchased in Daryl's name alone, they purchased the Green Top Residence jointly and intended to be joint owners of the house, and that Kimberly paid one-half of the down payment and closing costs. The trial court concluded that Daryl and Kimberly jointly owned the Green Top Residence as tenants in common, each owning a one-half, undivided separate property interest in the house.

Whether property is separate or community is determined by its character at the inception of the party's title. *Sharma v. Routh*, 302 S.W.3d 355, 360 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (op. on reh'g). Inception of title occurs when a party first has a right of claim to the property by virtue of which title is finally vested. *Id.*

In *Harrington v. Harrington*, the court of appeals affirmed the trial court's finding that the husband and wife owned a home, which they purchased prior to marriage, as tenants in common pursuant to an oral partnership. *See* 742 S.W.2d 722, 725 (Tex. App.—Houston [1st Dist.] 1987, no pet.). The trial court found that the parties looked for a home, agreed on the choice of a home, and both parties attended the closing. *Id.* at 723. The trial court further found that, at the time of the purchase of the home, that parties agreed that title to the property would be taken in the appellant's name, for credit purposes and convenience only, but intended that the residence be owned, used, and enjoyed jointly. *Id.* at 723–24.

Here, it is undisputed that the parties initially agreed to buy a home together. There is evidence that the parties looked for house together and chose this house so that Kimberly's children could continue to attend the same schools. There is also evidence

---

[1] *See* TEX. CONST. art. XVI, § 15; TEX. FAM. CODE ANN. § 3.001(1) (West 2006).

[2] *See Cameron v. Cameron*, 641 S.W.2d 210, 215 (Tex. 1982); *Graves v. Tomlinson*, 329 S.W.3d 128, 156 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

7

that the parties agreed that the home would be purchased in Daryl's name only due to Kimberly's poor credit, and that the parties had agreed on how to handle the payment of the mortgage and expenses. Thus, there is evidence to support the trial court's finding that Daryl and Kimberly owned the Green Top Residence as tenants in common.[3] We overrule Daryl's first issue.

In his second issue, Daryl argues that even if we uphold the trial court's determination that the parties jointly owned the Green Top residence, then the trial court erred in ordering (1) partition by sale of the property, (2) a division of the sale proceeds from the property based on the date of divorce, and (3) Daryl to bear all expenses relating to the property following the date of the divorce. Daryl also asserts that the trial court mischaracterized the property debt and other expenses as community debt.

However, the parties sold the Green Top Residence March 30, 2011, pursuant to temporary orders while the appeal was pending in this court. An issue becomes moot if a controversy ceases to exist or the parties lack a legally cognizable interest in the outcome. *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2005); *Bd. of Adjustment of City San Antonio v. Wende*, 92 S.W.3d 424, 427 (Tex. 2002); *see also In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding) ("A case becomes moot if a controversy ceases to exist at any stage of the proceedings, including the appeal."). Because the parties sold the property during the pendency of this appeal, this issue is moot because there are no further issues regarding the potential sale or partition of the property or any issue regarding payment of the mortgage and maintenance expenses associated with the ownership of the property.[4] We overrule Daryl's second issue.

---

[3] We disagree with Daryl's assertion that the statute of frauds required the agreement to purchase the Green Top Residence be in writing. An agreement for the joint acquisition of land is not a contract for the sale of land and, therefore, is not subject to the statute of frauds. *Williams v. Gaines*, 943 S.W.2d 185, 190 (Tex. App.—Amarillo 1997, writ denied) (op. on reh'g).

[4] Daryl argues that the division of proceeds issue is not moot because the property was not partitioned correctly, i.e., the trial court divided the house as if it were community property. However, the net proceeds from the sale of the house were deposited into the registry of the court, and Kimberly

8

## Honeywell 401K Loan

In his third issue, Daryl argues that the evidence is legally and factually insufficient to support the trial court's finding of fact and conclusion of law that he misappropriated $40,000 from his Honeywell 401K account. Daryl had a 401K retirement account with his employer, Honeywell, where he had been employed since 1994. In October 2007, Daryl borrowed $50,000 from his Honeywell 401K. Daryl testified that he did not need Kimberly's permission to take out the loan, but had a conversation with her about the loan and that she had no objection to taking out the loan. Kimberly, however, testified that Daryl never discussed the $50,000 loan with her, and the first time she learned of the loan was during the divorce. Kimberly testified that she did not know how Daryl had spent the loan proceeds. At the time of trial, the balance on the loan was $40,000.

The trial court found that Daryl withdrew $50,000 from his Honeywell 401K without Kimberly's knowledge and used the funds for his own purposes, and Daryl owed $40,000 to the community portion of the Honeywell 401K account. In its conclusions of law, the trial court determined that Daryl "misappropriated" $40,000 from the community.

Waste occurs when one spouse, dishonestly or purposefully with the intent to deceive, deprives the community estate of assets to the detriment of the other spouse. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998). Waste is one of the non-exclusive factors that a district court may consider in its "just and right" division of community property. *Id.* at 588.

Fraud on the community is a judicially created concept based on the theory of constructive fraud and applied where is a breach of a legal or equitable duty violating the fiduciary relationship existing between spouses. *Knight v. Knight*, 301 S.W.3d 723, 731

conceded on appeal that she gets one-half of the proceeds. At oral argument, Daryl agreed that there is no controversy if the proceeds are "net" and are divided equally.

9

(Tex. App.—Houston [14th Dist.] 2009, no pet.); *Zieba v. Martin*, 928 S.W.2d 782, 789 (Tex. App.—Houston [14th Dist.] 1996, no writ) (op. on reh'g).  A fiduciary duty exists between a husband and a wife as to the community property controlled by each spouse. *Knight*, 301 S.W.3d at 731; *Zieba*, 928 S.W.2d at 789.  Any such conduct in the marital relationship is termed fraud on the community because, although not actually fraudulent, it has all the consequences and legal effects of actual fraud in that such conduct tends to deceive the other spouse or violate confidences that exist as a result of the marriage. *Knight*, 301 S.W.3d at 731; *Zieba*, 928 S.W.2d at 789.  A presumption of constructive fraud arises where one spouse disposes of the other spouse's one-half interest in community property without the other's knowledge or consent.  *Knight*, 301 S.W.3d at 731; *Zieba*, 928 S.W.2d at 789.  In that circumstance, the burden of proof to show fairness in disposing of community assets is upon the disposing spouse.  *Knight*, 301 S.W.3d at 731; *Zieba*, 928 S.W.2d at 789.  The court may consider fraud on the community in the division of the estate and may justify an unequal division of the property. *Schlueter*, 975 S.W.2d at 588.

Acknowledging that it was his burden to disclose how the money was spent, Daryl avers that he did not give the money away to anyone, but, instead, the community benefitted from "[e]very penny" of the loan.  Daryl contends that he used the loan proceeds generally to pay community debts, finance community purchases, and pay community bills.  Daryl also asserts that he used $25,000 of the $50,000 loan to pay off a $25,000 community debt on the purchase of a "Harris FloteBoat."  Daryl also claims that he put some of the money into an Ameritrade account, "possibly" funded some community vacations, and made $15,000 worth of repairs and improvements to the Green Top Residence.

When asked what debts he paid off, Daryl testified that he paid off the $25,000 loan on the boat, but further stated:

> I'm not exactly sure where the rest of it went, but it would have went in investments, it would have went on other loans.  I didn't trace all — every

10

penny of it. Some of it was probably used for vacations. I don't really know. But I didn't take it off [sic], I didn't give to people.

With regard to paying for vacations, however, Daryl testified at deposition that Kimberly paid for their vacations because that was the way she liked to spend her money. Daryl further testified as to how he spent the loan proceeds:

Q.	Okay. And, in fact, you did mention that you thought you used 25,000 of pay off the boat, correct?

A.	Yes.

Q.	An did you also put some of it in the Ameritrade account which you stipulate is community property?

A.	Yes. And I also —

\*    \*    \*

Q.	And that was just conjecture because you really can't remember what you did with the other 25,000 of the 50 after used 50 (sic) to pay the boat, correct?

A.	Right. And I could have spent some on vacation. I don't recall.

Daryl further testified that he put new Hardy Plank on the entire house to repair the siding that the dogs tore off:

Q.	Mr. Aaron, how much siding did $15,000 buy? How much of the house did you cover in siding?

A.	I put Hardy Plank siding on the whole house and had it repainted and had the gutters done. And insurance covered a little bit of the roof for hail damage, but some of that was roof.

\*    \*    \*

Q.	But repairing the wood that the dogs chewed would not have required you to have to Hardy Plank the entire house and put on new gutters, would it?

A.	No.

11

\*     \*     \*

Q.     So, you're contending that 15,000 of the 50,000 that you took out of the community funds of the Honeywell retirement [account] was [sic] spent to improve and enhance your claimed separate property house?

A.     Well, I wouldn't characterize it completely like that. It was to repair.

Daryl's testimony shows that he cannot account for how he spent the loan proceeds and cannot demonstrate that that the community estate benefitted from the expenditure of the loan proceeds. The trial court's conclusion that Daryl has not met his burden to show how he spent the loan proceeds is supported in this record and, therefore, we overrule Daryl's third issue.

### Keystone Raptor RV

In his fourth issue, Daryl argues that the evidence is legally and factually insufficient to support the trial court's finding and conclusion that there was no outstanding loan on the Keystone Raptor RV. The parties disputed whether there was an outstanding loan a Keystone Raptor RV purchased on November 5, 2007. The entire purchase was financed. Relying on his inventory, Daryl asserted that a $37,444.88 balance on the RV exists. Daryl argues that, due to a mistake made when the title was issued on December 10, 2007, no lien was shown on the title. A letter dated December 16, 2009, from GEMB Lending states that "a clerical error was made to your title. Your state requires that the incorrect title be surrendered prior to a corrected title being issued."

Kimberly testified that Daryl gave her a phone number to call to obtain the payoff information. However, when Kimberly called the phone number, the person she spoke to told her that information could only be given to Daryl. Kimberly issued a subpoena duces tecum to Daryl to bring the current payoff amount for the RV on the first day of trial—February 1, 2010. Kimberly testified that Daryl produced a document, on April 1, 2010, that had the payoff amount. On the last day of trial—April 9, 2010—Daryl attempted to introduce into evidence a document purportedly disclosing the payoff

12

amount on the RV loan.  However, the trial court stated, "Well, he had plenty of time to provide that before today," and the evidence was not admitted into evidence at trial.

The only evidence to which Daryl can cite in support of his contention that a balance exists on the RV is his own inventory.  The title showing that the RV has no liens against it is some evidence that no loan balance existed on the RV.  We overrule Daryl's fourth issue.

<strong>Division of Community Estate</strong>

In his fifth issue, Daryl argues that the decree does not conform to its own provisions that the community estate was apportioned 47.2% to Daryl and 52.8% to Kimberly, and the evidence is legally and factually insufficient to support the trial court's findings of fact and conclusions of regarding such division.  Daryl asserts the division was actually 69.5% to Kimberly and 30.5% to Daryl because the decree did not include the outstanding $41,423.94 balance on the Honeywell 401(k) or the outstanding $37,444.88 balance on the RV in the valuation of the community estate.  Instead, the trial court assessed the $41,423.94 and $37,444.88 loan balances to Daryl, resulting in Daryl receiving only a net estate in the amount of $76,211.18 instead of the $155,080.00 amount stated in the decree.

Reasserting his arguments in his third and fourth issues, Daryl argues that the trial court did not properly include in its calculation the value of the community estate: (1) the outstanding balance of $41,423.94 due on the Honeywell 401(k) loan as of December 31, 2009, and (2) the outstanding balance of $37,444.88 due on the RV loan.  Because we have determined that the evidence is legally and factually sufficient to support the trial court's findings on the Honeywell 401(k) loan and the RV loan, we overrule Daryl's fifth issue.

13

## Finding on Credibility

In his sixth issue, Daryl argues that the evidence is factually insufficient to support the trial court's finding of fact that he was not a credible witness. "[W]e do not 'set aside' the trial court's findings of credibility but, indeed, as the law requires on a factual sufficiency issue, review all the evidence, giving *due* deference to [the] fact finder." *Rusk v. Rusk*, 5 S.W.3d 299, 304 n.5 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (emphasis in original).

The evidence showed that Daryl had taken a $50,000 loan on this Honeywell 401K without Kimberly's knowledge and could not establish how he spent the money. Daryl claimed that he purchased the Green Top Residence as his separate property, while the evidence showed that he and Kimberly had an agreement to purchase the home jointly. The trial court resolved these issues against Daryl. In a bench trial, the trial court is the sole judge of the credibility of the witnesses, assigns the weight to be given their testimony, may accept or reject all or any part of their testimony, and resolves any conflicts or inconsistencies in the testimony. *Rich v. Olah*, 274 S.W.3d 878, 884 (Tex. App.—Dallas 2008, no pet.). The court of appeals may not pass upon the credibility of the witnesses or substitute its judgment for that of the trier of fact, even if a different answer could be reached upon review of the evidence. *Id.* We conclude that the evidence is factually sufficient to support the trial court's finding that Daryl was not a credible witness. We overrule Daryl's sixth issue.

## Request for Additional Findings of Fact & Conclusions of Law

In his seventh issue, Daryl argues that the trial court erred in failing to make additional and/or amended findings of fact and conclusions of law and in refusing to grant his motion for modification and motion for new trial. Daryl reasserts arguments made in his other issues as a basis for this issue.

Rule 298 of the Texas Rules of Civil Procedure permits a party to request specific additional or amended findings or conclusions "after the court files original findings of

fact and conclusions of law." TEX. R. CIV. P. 298. A trial court is not required to make additional findings of fact and conclusions of law that are unsupported in record, evidentiary, or contrary to other previous findings. *Rich*, 274 S.W.3d at 886; *Buckeye Retirement Co., LLC, Ltd. v. Bank of Am., N.A.*, 239 S.W.3d 394, 402 (Tex. App.—Dallas 2007, no pet.); *see also Collins v. Walker*, 341 S.W.3d 570, 574–75 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (op. on reh'g) ("A trial court has no duty to make additional or amended findings that are unnecessary or contrary to its judgment; a trial court is only required to make additional findings and conclusions that are appropriate. . . . [T]he trial court is not required to make additional findings which conflict with the original findings.").

A review of Daryl's requested findings of fact and conclusions of law reflects that they are related to evidentiary matters or matters contrary to the trial court's express findings. Therefore, the trial court did not err by refusing to Daryl's requested findings of fact and conclusions of law. *See Collins*, 341 S.W.3d at 575 (holding that the trial court was not required to adopt requested additional findings and conclusions because they were contrary to the judgment); *Buckeye Retirement Co., LLC, Ltd.*, 239 S.W.3d at 402 (holding that additional finding of fact would not have been appropriate because they were on an evidentiary issue and would have been unsupported by the record). Moreover, having overruled Daryl's other issues, we do not find that the trial court erred by refusing to grant his motion to modify the judgment or denying his motion for new trial. We overrule Daryl's seventh issue.

Accordingly, we affirm the trial court's judgment.


/s/     Sharon McCally
        Justice



Panel consists of Justices Brown, Boyce, and McCally.

15